BRUNSWICK COUNTY,
Plaintiff–Appellant,

v.

The BANK OF TOKYO–MITSUBISHI, LIMITED, formerly known as The Bank of Tokyo, Limited, New York Agency, Defendant–Appellee.

No. 99–2380.

United States Court of Appeals, Fourth Circuit.

Argued May 3, 2000

Decided June 7, 2000

**ARGUED:** John Joseph Butler, Parker, Poe, Adams & Bernstein, L.L.P., Raleigh, North Carolina, for Appellant. Thomas Joseph Hall, Chadbourne & Parke, L.L.P., New York, New York, for Appellee. **ON BRIEF:** Charles C. Meeker, Parker, Poe, Adams & Bernstein, L.L.P., Raleigh, North Carolina, for Appellant. Brian A. Miller, Chadbourne & Parke, L.L.P., New York, New York; L. Neal Ellis, Jr., Albert Diaz, Hunton & Williams, Raleigh, North Carolina, for Appellee.

Before MURNAGHAN, LUTTIG, and MICHAEL, Circuit Judges.

Reversed and remanded by published opinion. Judge LUTTIG wrote the opinion, in which Judge MURNAGHAN and Judge MICHAEL joined.

## OPINION

LUTTIG, Circuit Judge:

Plaintiff-appellant Brunswick County appeals from the district court's grant of summary judgment to defendant-appellee The Bank of Tokyo–Mitsubishi, Ltd., on the County's claim that the Bank breached its contract with the County. For the reasons that follow, we reverse and remand.

### I.

Appellant Brunswick County was the beneficiary of a letter of credit issued by appellee The Bank of Tokyo–Mitsubishi, Ltd., f/k/a The Bank of Tokyo, Ltd., New York Agency ("the Bank"). The Bank issued the $750,000 irrevocable letter of credit to guarantee the performance of its customer, BCH Energy, Limited Partnership ("BCH" or "the Partnership"), which had entered into a solid-waste Resource Recovery and Transportation Agreement ("RRA") with the County. Under the RRA, BCH was obligated to reimburse the County for part of the costs associated with the construction of a solid-waste collection facility. BCH defaulted on this obligation and was later forced into bankruptcy. The County then attempted on two occasions to draw down on the letter of credit by submitting a drawing certificate signed by an authorized official of the County. On both occasions, the Bank refused to honor the draw request, contending that, under the terms of the letter of credit, the County was required to produce either BCH's co-signature or a written arbitration award. The County then brought this action, which the Bank removed to the district court, invoking the district court's diversity jurisdiction. Finding "no ambiguity" in the terms of the letter of credit, the district court granted summary judgment to the Bank.

### II.

New York law governs this federal diversity case. Under New York law, in order to recover on its claim that the Bank wrongfully refused to honor its request to draw down on the letter of credit, the County must prove that it strictly complied with the terms of the letter of credit. *See Marino Industries Corp. v. The Chase Manhattan Bank, N.A.,* 686 F.2d 112 (2nd Cir.1982); *see also id.* at 115 (stating that under New York law "[t]he corollary to the rule of strict compliance is that the requirements in letters of credit must be explicit, [ ... ] and that all ambiguities are construed against the bank") (citations omitted).[1] The district court granted summary judgment to the Bank because it concluded as a matter of law that the County failed to strictly comply with the terms of the letter of credit. Specifically, the district court held that the County failed to comply with either "of the two alternative draw conditions" set forth in "Annex I," a model drawing certificate attached to the actual letter of credit.

Annex I, which the district court assumed sets forth substantive limitations on the County's ability to draw down, consists of four numbered paragraphs, each of which the County apparently had to "cer-

1. Although, under New York law, we must construe "all ambiguities [ ... ] against the bank," we may do so only as strongly as would be reasonable. *See Venizelos, S.A. v. Chase Manhattan Bank,* 425 F.2d 461, 465–66 (2nd Cir.1970) ("if ambiguity exists, the words are taken *as strongly* against the issuer *as a reasonable reading will justify"* (emphases added)). The requirement that we construe all ambiguities against the bank as strongly as reasonable, however, is not the equivalent of a requirement that we render judgment as a matter of law against the bank whenever there is any ambiguity. *See, e.g.,* *United States Steel Corp. v. The Chase Manhattan Bank, N.A.,* 1984 WL 598, at *2 (S.D.N.Y.) (holding that, although a provision of the letter of credit was ambiguous, summary judgment was improper); *Automation Source Corp. v. Korea Exchange Bank,* 249 A.D.2d 1, 3, 670 N.Y.S.2d 847 (N.Y.App.Div.1998) (same). Were it otherwise, we would be obliged to render judgment against the bank in every instance in which there was ambiguity, regardless of the implausibility of the beneficiary's construction of the letter of credit's terms.

tif[y]" had been satisfied. Three of these four paragraphs are stated in the alternative, with square brackets enclosing each alternative and group of alternatives.[2] These paragraphs refer to the County as "the Beneficiary" and BCH as "the Partnership," and they provide in relevant part:

> [ (3) You are directed to make immediate payment of the requested drawing to the Beneficiary's account no. ____ at [insert bank name and address]. [Include when this certificate is signed by both the Beneficiary and the Partnership]]
>
> [(4) . . . ]
>
>   or
>
> [ (3) You are directed to make immediate payment of the requested drawing to the Beneficiary's account no. ____ at [insert bank name and address]. The date of the requested drawing is at least 30 days after the decision of the arbitrator . . . was delivered to the Bank. [Include when this certificate is only signed by a Beneficiary and after a written finding of an arbitrator has been delivered to the Bank]]
>
> [(4) . . . ]

J.A. 513 (brackets in original). Based on the language of the bracketed instructions at the end of each of the two alternative formulations of paragraph (3), the district court concluded, with little explanation, that Annex I conditioned the County's draw down on its production of either BCH's co-signature or a written arbitration award. In so concluding, the court presumably reasoned as follows. Because Annex I provides for only two ways in which to "[i]nclude" paragraph (3) in the drawing certificate—producing BCH's co-signature and producing a written arbitration award—and because the drawing certificate must include paragraph (3) in order for the County to draw

down, these are the *only* two ways in which a draw-down may occur.

We believe that a reasonable jury could well draw just such a conclusion. We are convinced, however, that this cannot be so concluded *as a matter of law*. First, the letter of credit itself nowhere conditions draw–downs on the County's production of either BCH's co-signature or a written arbitration award, even though it purports to "set[ ] forth in full" the substantive obligations of the parties, and even though it clearly sets forth other substantive limitations on the County's ability to draw down, such as the ceiling on the aggregate amount of draw-downs that the County may make. J.A. 511, 509.

Second, a reasonable jury could conclude that Annex I does not impose any substantive limitations on the County's ability to draw down at all. The only sentence in the letter of credit that explicitly references Annex I says nothing more than that a draw-down is conditioned on the Bank's receipt of "a written certificate *in the form of* Annex I." J.A. 509 (emphasis added). Therefore, while it could be concluded, as did the district court, that Annex I prescribes substantive preconditions on the County's ability to draw down, it likewise could reasonably be concluded that Annex I prescribes nothing more than the *form* in which the drawing certificate must be presented. In other words, a jury could reasonably determine that Annex I simply prescribes that the certificate be dated, that the date be followed by the Bank's address and a reference line stating the serial number of the letter of credit, and that this information in turn be followed by some combination of the aforementioned four paragraphs and by the signature block.

Third, even if Annex I does impose substantive limitations on the County's ability

---

**2.** Each of the two combinations of paragraphs (3) and (4) are separately bracketed, apparently indicating that the drawing certificate must include both paragraphs from either the first bracketed combination or the second bracketed combination. Thus, for example, the drawing certificate cannot include paragraph (3) from the first bracketed combination and paragraph (4) from the second bracketed combination.

to draw down, it need not be read as conditioning a draw-down on the County's production of either BCH's co-signature or a written arbitration award. The Bank contends that Annex I must be so read because the bracketed instructions at the end of each of the two alternative formulations of paragraph (3) define the exclusive set of circumstances under which paragraph (3) may be "[i]nclude[d]" in the drawing certificate, and because paragraph (3) must be included in the drawing certificate in order for the County to draw down. We disagree. The bracketed instruction "[Include when this certificate is signed by both the Beneficiary and the Partnership]" simply instructs the County to insert the first alternative formulation of paragraph (3) into the drawing certificate when the County has produced both its own and BCH's signatures. It does not say that the County may not also insert the first alternative formulation of paragraph (3) into the drawing certificate when the County has produced only its own signature. That is, the bracketed instruction at the end of the first alternative formulation of paragraph (3) does not purport to describe *every* circumstance in which the first alternative formulation of paragraph (3) may be used. It might be so understood if it were worded "[Include *only* when this certificate is signed by both the Beneficiary and the Partnership]." But it

is not so worded, and a reasonable jury need not so read it.

Fourth, reading Annex I to permit the County to use the first alternative formulation of paragraph (3) when the County has produced only its own signature would not render the second alternative formulation of paragraph (3) superfluous. The Bank contends that it would, because the County would never proceed through arbitration if it could simply unilaterally draw down a liquidated amount of damages. But even if the County could unilaterally draw down a liquidated amount of damages under the first alternative formulation of paragraph (3), the County might still elect to arbitrate its dispute with BCH and thus draw down under the second alternative formulation of paragraph (3), in order to preserve its working relationship with BCH and to reduce the risk of future litigation by BCH.[3]

Because the letter of credit, together with Annex I attached thereto, can reasonably be interpreted in either of the two ways advanced by the parties, the district court erred in granting summary judgment to the Bank. And because, construing all ambiguities against the Bank as strongly as would be reasonable, we cannot say that the County's interpretation is correct as a matter of law, summary judgment for the County is also inappropriate. Accordingly, the judgment of the district court is

---

**3.** Even were we to resort to parol evidence, we would still conclude that this case may not properly be resolved at the summary judgment stage, because the parol evidence is also ambiguous. For example, the following two sentences from section 7.05 of the RRA could be read in two very different ways:

> The Letter of Credit shall be arranged in such a manner that permits the County to draw upon the Letter of Credit from time to time for any *liquidated amount* owed to the County under this Agreement after [BCH] has committed a breach of this Agreement [ ... ]. The Letter of Credit shall provide that the County may draw upon the Letter of Credit immediately upon the submission of a written agreement signed by the County *and* [BCH] authorizing such payment *or* thirty (30) days after submission to the Issuing Bank of a written finding by an arbitra-

tor [ ... ] certifying the amount owed by [BCH] to the County.

J.A. 168 (emphases added). The second sentence could, as the Bank contends, be read as *qualifying* the first sentence. That is, it could be read as setting forth the two exclusive circumstances under which the County may draw down a liquidated amount of damages. But it need not be read this way. It could also be read as setting forth a requirement that must be satisfied only in circumstances *not* covered by the first sentence, namely, circumstances in which *non*-liquidated damages are sought. In other words, the second sentence could, as the County contends, reasonably be read as having no effect on the County's ability to unilaterally draw down a liquidated amount of damages under the first sentence.

reversed and the case is remanded for trial.

*REVERSED AND REMANDED*